### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 24-MJ-00050** |
| | : | |
| **JOHN CONRAD WORRELL III,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A). There is a serious risk that the defendant will flee prosecution. As demonstrated below, the government can show by a preponderance of the evidence that there are no conditions or combination of conditions that can reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(f)(2)(A).   The defendant is charged with Theft of Government Property in violation of 18 U.S.C. § 641 and Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 2312.

The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, are considered in the Court's determination regarding pre-trial detention.

### II. Legal Authority and Argument

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, a detention hearing must be held at the government's request if the defendant poses a serious risk of flight.  *Id.* at § 3142(f)(2)(A).

1

The BRA provides that a judicial officer "shall order the detention of the [defendant] before trial," *id*. § 3142(e)(1), if, after a detention hearing held under 18 U.S.C. § 3142(f), and upon consideration of "the available information concerning" enumerated factors, *id.* § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that the defendant is a serious risk of flight were he to be released. *United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam,* 84 F.3d 441, 443 (D.C. Cir. 1996). In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (per curiam).

At the hearing, the "rules concerning the admissibility of evidence in criminal trials do not

apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. §

3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*,

79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in

precise detail how the government will prove its case at trial, nor specify exactly what sources it

will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*,

798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery

device and cross-examination should be limited to the disputed issues, since the detention hearing

is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*,

79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

A review and understanding of the facts and circumstances in this case should allow the

Court to conclude that there is no condition or combination of conditions that would assure

appearance of the defendant in court. *See* 18 U.S.C. § 3142(e)(1).

### A.  Nature and Circumstances of the Offense Charged

On Tuesday, February 6, 2024, an FBI SA ("Victim Agent") assigned to a squad located

at the FBI Washington Field Office's NVRA travelled to FBI Headquarters, located at 935

Pennsylvania Avenue, Washington, D.C. ("FBI HQ"). Upon arrival at FBI HQ, at approximately

12:07 p.m., the SA parked their FBI-issued vehicle, a dark green four-door Ford sedan, in a parking

space in the basement of FBI HQ. The GSA-owned vehicle, assigned to the FBI, was issued to the

Victim Agent for use in their official duties as an FBI SA, and was assigned FBI vehicle property

number 14-2369.

Due to the limited parking available at FBI HQ, keys to vehicles parked at FBI HQ are left

in the parked vehicles to allow vehicles to be moved by authorized personnel on an as-needed

basis. At approximately 1:15 pm, the Victim Agent returned to where they had parked their FBI-issued vehicle and determined that the vehicle was no longer in the parking spot in which the Victim Agent had left the vehicle. After searching all levels of the FBI HQ basement for their FBI-issued vehicle, the Victim Agent notified the FBI Police at approximately 2:22 pm that their FBI-issued vehicle was missing. FBI Police conducted another search of the parking lot and were unable to locate the Victim Agent's vehicle.

A vehicle bearing a resemblance to the dark green four-door Ford sedan was captured by FBI surveillance cameras exiting the 10th Street FBI HQ garage ramp at approximately 12:26 p.m. The surveillance video was observed by FBI Police and the Victim Agent.

At approximately 2:02 p.m., the Victim Agent's vehicle entered the driveway of an FBI facility located in Vienna, Virginia. The Victim Agent's vehicle approached a guard shack near a movable anti-vehicle barricade. The driver of the stolen FBI-issued vehicle, subsequently identified as JOHN CONRAD WORRELL III, attempted to enter the restricted facility.  The defendant identified himself as the Victim Agent to a security guard at the gate and displayed the Victim Agent's FBI credentials, which had been in a bag in the Victim Agent's FBI-issued vehicle, to the guard.   The defendant claimed to have a classified meeting at the Vienna FBI facility. When the defendant was unable to provide FBI access cards that matched the Victim Agent's identity, the defendant was denied access to the facility and was directed to park in a nearby visitor lot.

The defendant subsequently parked the Victim Agent's FBI-issued vehicle in the visitor lot at approximately 2:03 p.m. At approximately 2:10 p.m., the defendant backed the stolen FBI vehicle out of the parking spot and again approached the guard shack. The defendant was again denied access to the FBI facility and directed back to the visitor lot.   The defendant parked the

Victim Agent's FBI-issued vehicle at approximately 2:11 p.m., then emerged from the vehicle at approximately 2:12 p.m. Over the course of the next 45 minutes, the defendant was repeatedly approached by security personnel. After repeated requests by security personnel, the defendant provided his Virginia Driver's License bearing customer identifier number B6605XXXX and name JOHN CONRAD WORRELL III. The picture and name on the Virginia Driver's License did not match the name and photograph on the Victim Agent's FBI credentials presented by the defendant. Security personnel subsequently requested that the defendant provide the last 4 digits of his Social Security Number (SSN). The SSN provided to security personnel by the defendant did not match the SSN associated with the FBI Credentials in FBI databases.

Vienna Police Department ("Vienna PD") arrived at the Vienna FBI facility at approximately 3:02 p.m. After being verbally advised of his Miranda Rights, the defendant stated in substance that he stole the vehicle from the FBI garage; the keys were inside the vehicle on the dashboard; and the vehicle was unlocked.   The defendant did not identify himself as an agent to the Vienna PD officers.

During the interaction with Vienna PD, the defendant consented to a search of the stolen FBI-issued vehicle. When Vienna PD officers asked the defendant if he had any weapons, the defendant stated that he did not have any on his person, and there were none in the vehicle to his knowledge. During the consent search of the Victim Agent's FBI-issued vehicle, a loaded handgun magazine was recovered by Vienna PD officers from a fanny pack belonging to the Victim Agent. The fanny pack was located in the front passenger seat of the stolen FBI vehicle. The jacket and the sunglasses that the defendant was wearing while speaking with Vienna PD were also determined to belong to the Victim Agent.   The defendant was detained by Vienna PD and

transferred to the custody of the FBI Police.

In a Mirandized interview, the defendant stated that he did not have permission to use the FBI-issued vehicle; that he did not know which FBI employee the vehicle was assigned to; and that the defendant drove the FBI-owned vehicle from FBI HQ, located in the District of Columbia, to the Vienna FBI facility located in the Commonwealth of Virginia and attempted to gain access to the Vienna FBI facility utilizing law enforcement credentials that were not his own.   The defendant stated that he lived in Virginia and recounted his route of travel from FBI HQ to the Vienna FBI facility. The defendant believed he had been receiving coded messages, which appeared in various forms including e-mails, "stage whispering," and a variety of different context clues over the course of several weeks, indicating that the defendant was in danger, and thus he was attempting to go to a secure facility where he could be "safe."

FBI records indicate that on February 6, 2024, the defendant was employed by an outside government contracting agency and assigned to FBI HQ.   The defendant's status as an FBI contractor granted him authorized access to FBI HQ as part of his job and the defendant had reported to work at FBI HQ that day. As part of his work as an FBI contractor, the defendant was issued an FBI contractor access badge.   The defendant has never been issued FBI law enforcement credentials because the defendant was not a sworn law enforcement officer.   The defendant was familiar with the location and function of the FBI facility in Vienna due to having previously visited the site as part of his employment.   The Victim Agent does not know the defendant and did not authorize him to use his government-issued vehicle nor his credentials.

The charges faced by the Defendant are serious enough that the possible maximum term of imprisonment the Defendant faces upon conviction provides an incentive to flee.  *See United*

*States v. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990).   The Defendant faces up to ten years of imprisonment for both charges.   Courts have repeatedly held that with serious charges and the possibility of considerable punishment comes "a substantial incentive to flee the United States." *See United States v. Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (finding detention appropriate for Defendant facing stiff penalties for bribery and visa fraud).

### B.    Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, which also weighs in favor of detention.[1]   The government's case against the Defendant is very strong.   There is no question that the Defendant stole the FBI issued vehicle from FBI HQ and drove it across state lines.   The Victim Agent parked the FBI issued vehicle at 12:07 p.m. at FBI HQ.   At approximately 1:15 p.m., the Victim Agent came back to the parking spot and determined that the vehicle was no longer in the same parking spot.   After searching for the vehicle, the Victim Agent notified FBI police about the missing vehicle at approximately 2:22 p.m.   Surveillance footage captured the stolen FBI issued vehicle exiting the 10th Street FBI HQ garage ramp at approximately 12:26 p.m. The defendant was observed in the stolen vehicle at approximately 2:02 p.m. at the FBI facility in Vienna, Virginia.

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of section 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are – in accordance with the specific facts of this case – to determine whether pretrial detention is appropriate." *Id.*  In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  The Second Circuit reached the same decision after   a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022).  This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

After the defendant was arrested, in a Mirandized interview the defendant admitted that he knew that he did not have permission to use the FBI-issued vehicle; that he did not know which FBI employee the vehicle was assigned to; and that he drove the FBI-owned vehicle from FBI HQ, located in the District of Columbia, to the Vienna FBI facility located in the Commonwealth of Virginia and attempted to gain access to the Vienna FBI facility utilizing law enforcement credentials that were not his own.   Furthermore, what is the most disturbing and troubling, is that the defendant stated that he had been receiving coded messages in various forms, including emails, that indicated that he is was in danger, and therefore, was attempting to go to a secure facility where he could be "safe."

Indeed, "[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that the defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."   *United States v. Blackson,* No. 23-3020, 2023 WL 2663034 at 10 (D.C. Cir. Mar. 28, 2023).   This is such a case, and the Defendant should be detained pretrial.

**C.**   **The Defendant's History and Characteristics**

The Defendant's history and characteristics likewise support detention.   While the Defendant has no criminal convictions of which the government is aware, other factors support his detention.



This further supports this Court finding by a preponderance of the evidence that there are no conditions or combination of conditions that will ensure his appearance at future court hearings.

    **D.**    <u>**Danger to the Community**</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   The defendant's actions in the instant case were erratic, dangerous, and unpredictable.   The defendant stole a FBI issued vehicle and then impersonated a federal agent at another FBI facility by using that agent's credentials.   In his interview, the defendant admitted that he knew it was wrong to use the agent's credentials.   He also stated that he believed that he was in danger, and thus he was attempting to go to a secure facility where he could be deemed "safe."   Inside the stolen vehicle, was a fanny pack that belonged to the Victim Agent that contained a loaded handgun magazine.

This fourth factor weighs in favor of detention.   As a result, the government

9

contends he should be detained pending trial.

### III. <u>Conclusion</u>

In examining the four factors, there are no conditions or combination of conditions that will ensure the defendant's appearance at future court hearings. Therefore, the government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

*/s/ Shehzad Akhtar*
Shehzad Akhtar
D.C. Bar 493635
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20579
Phone:   (202) 252-7498
Email:   Shehzad.Akhtar@usdoj.gov